UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

Alberto Rios,                                       Civil No. 10-3313 (PJS/FLN)

            Petitioner,

    v.                                          **REPORT AND RECOMMENDATION**

Scott P. Fisher, Warden,

            Respondent.

_____

Petitioner, *Pro Se*.
D. Gerald Wilhelm, Assistant United States Attorney, for Respondent.

_____

**THIS MATTER** came before the undersigned United States Magistrate Judge on Petitioner's petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2241 (ECF No. 1). Respondent filed a response in opposition to Petitioner's petition (ECF No. 4), and Petitioner filed a reply brief (ECF No 10.) The matter was referred to the undersigned for Report and Recommendation pursuant to 28 U.S.C. § 636 and Local Rule 72.1. For the reasons which follow, this Court recommends that the petition be **DENIED**.

**I. BACKGROUND**

Petitioner Alberto Rios ("Petitioner") is currently incarcerated at the Federal Correctional Institution in Sandstone, Minnesota ("FCI Sandstone"). Petitioner is serving a 108-month sentence, followed by three years of supervised release, for his conviction of conspiracy to distribute or possess with intent to distribute cocaine, in violation of 21 U.S.C. § 846. (ECF No. 5, Buege Decl. ¶ 3, Attach. A.) Petitioner has a projected release date of June 19, 2013, via Good Conduct Time release. *Id.*

Petitioner brings this § 2241 habeas corpus petition claiming that a habeas writ should issue to relieve him from a disciplinary sanction of the loss of 27 days of good conduct time, a transfer to a higher security institution, and the placement of a greater security management variable on his BOP custody classification form.[1]

In August of 2009, Petitioner was an inmate at the Federal Correctional Institution at El Reno. (Buege Decl. Attach. D.) Petitioner was on his work assignment as the milk truck driver at Federal Correctional Center at Beamont-SPC ("SPC Beaumont") when the events underlying this Petition occurred. (Buege Decl. Attach. B and D.) On August 28, 2009, Les Phillips, the Camp Administrator for SPC Beaumont, wrote an incident report charging Petitioner with Conduct which Disrupts or Interferes with the Security or Orderly Running of the Institution, a violation of Code 299 of Bureau of Prisons ("BOP") policy, most like Threatening Another with Bodily harm or Any Other Offense, a violation of Code 203 of BOP policy. (Buege Decl. Attach. B.) Mr. Phillips reported:

> On August 28, 2009, at approximately 6:45 a.m., while conducting a random search of Inmate Alberto Rios . . . on the inner compound, I discovered three stamped and sealed letters concealed inside his trip book book case. I immediately observed the letters did not contain his name and register number, nor were they addressed correctly with the institution's address. I observed one of the letters to have a return name and address of [redacted]. I immediately determined the letters were written by inmate [redacted] . . . . When questioned, inmate Rios stated an inmate asked him to mail the letters for him. Inmate Rios admitted he was going to mail the letters outside the confines of the institution. Inmate Rios admitted he was going to utilize his work assignment as the Milk Truck Driver and his furlough status to mail the letters. Inmate Rios denied knowing the contents within the letters. Upon review of the letters in the

---

[1]Through a petition for habeas corpus, a prisoner may only challenge the "validity of his conviction or the length of his detention." *Kruger v. Erickson*, 77 F.3d 1071 (8th Cir. 1996). Because Petitioner's requested relief regarding his transfer to a higher security facility and the security management variable on his custody classification form would affect the condition, rather than the duration of his confinement, they are not proper forms of relief pursuant to a petition for habeas corpus.

2

>presence of Inmate [redacted] the contained correspondence directed to other inmates confined in County, State, and Federal custody. The letters contained information concerning gang member activities and background reference checks on suspected incarcerated informants. Correspondence of this nature sent by a gang member instructing other gang members to conduct background checks on other inmates suspected of being informants generally results in the assault of suspected informants. During the interview process, both inmate Rios and [redacted] admitted to being prior "Tango" associates. Inmate [redacted] admitted he asked inmate Rios to mail the letters outside the confines of the institution.

(Buege Decl. Attach. B.)

Petitioner was provided with a copy of the incident report at 4:00 p.m. on August 28, 2009. *Id.* The investigating lieutenant read him his rights and Petitioner stated that he understood them. *Id.* When asked to provide a statement, Petitioner stated the he put the letters from the other inmate in his log book and forgot to take them out to mail them. *Id.* He further stated that Mr. Phillips accused him of providing a service to "bring stuff out" and that when Mr. Phillips asked to go through his things he didn't mind because he had nothing to hide. *Id.* The investigating lieutenant concluded that further investigation or a change of charges was needed, because nothing he read in the incident report supported a charge of threatening another with bodily harm. *Id.*

The incident report was referred to the Unit Discipline Committee ("UDC"), which held a hearing on August 31, 2009. (Buege Decl. Attach. B.) Petitioner was again advised of his rights. *Id.* Petitioner stated that the other inmate was in bed and asked him to mail the letters for him "in the institution." *Id.* The UDC recommended the maximum allowable sanctions and referred the charge to the disciplinary hearing officer ("DHO") for further hearing. (Buege Decl. Attach. B.) Prior to the DHO hearing, Petitioner was provided with two documents titled "Inmate Rights at Discipline Hearing" and "Notice of Discipline Hearing Before the DHO."

3

(Buege Decl. Attach. C.)  Petitioner signed both forms and indicated on the "Notice of Discipline Hearing Before the DHO" form that did not wish to have a staff representative or witnesses.  *Id.*

The DHO hearing was conducted on September 9, 2009.  (Buege Decl. Attach. D.) Petitioner stated at the hearing that as he was leaving SPC Beaumont to return to FCI El Reno, another inmate gave him some letters to place in the outgoing inmate mailbox.  *Id.*  He further stated that he was not going to mail the letters outside of the camp.  *Id.*  The DHO considered Mr. Phillips' statement contained in the Incident Report and the confiscated letters.  *Id.*  The DHO found the letters to corroborate Mr. Phillips' statement.  With regard to the contents of the letters, the DHO states:

> One of those letters was addressed to a female incarcerated in the Harris County Texas Jail.  Another was addressed to an inmate at FCI Seagoville.  In the letter to the inmate at FCI Seagovile inmate [redacted] discusses a gang member suspected of being an informant.  He also discusses asking the suspected informant for his "shit" (court documents).  Note – asking other inmates for their court documents is a common tool used by inmates to identify informants.

(Buege Decl. Attach. D.)

The DHO also considered Petitioner's statements at the hearing denying that he was planning to mail the letters outside SPC Beaumant, but found them to be without merit.  *Id.*  The DHO noted that when questioned by Mr. Phillips, Petitioner admitted he was going to use his status as the milk truck driver to mail the letters outside SPC Beaumont.  *Id.*  The DHO also noted that both Petitioner and the inmate for whom Petitioner agreed to mail the letters would be well aware that inmates are not allowed to write other inmates without staff permission.  *Id.*  The DHO concluded that Petitioner was using his status as the milk truck driver to assist the other inmate by mailing his letters at outside US Post Office facilities.  *Id.*  This would prevent staff from intercepting unauthorized outgoing letters written to other inmates.  *Id.*  The DHO further

found that these actions posed a threat to BOP security. The DHO stated that "gang members conducting gang business via the mail, such as discussing possible inmate informants, poses a direct threat to those other inmates. In a prison environment, suspected inmate informants are commonly assaulted." *Id.* The DHO found that Petitioner's assistance furthered the illicit conduct of the inmate who wrote the confiscated letters. *Id.*

Based on the foregoing, the DHO found Petitioner had committed the prohibited act of Conduct which Disrupts the Orderly Running of a BOP Facility, Most Like Threatening Another Person or Any Prohibited Act, BOP Code 299 most like Code 203. (Buege Decl. Attach. D.) Petitioner was sanctioned by the loss of 27 days of good conduct time and a disciplinary transfer. *Id.* The DHO advised Petitioner of his right to appeal through the Administrative Remedy procedure. *Id.* The DHO report was signed on September 15, 2009, and a copy was delivered to Petitioner on March 3, 2010. *Id.*

Petitioner appealed the decision of the DHO at the Regional and Central Office levels. (Buege Decl. ¶ 17, Attach. F.) Petitioner's appeal to the Central Office was received on May 17, 2010 and a response was due on July 16, 2010. *Id.* Petitioner did not receive a response within the time allotted for reply, therefore under 28 C.F.R. § 542.18, Petitioner "may consider the absence of a response to be a denial at that level." Petitioner has exhausted his administrative remedies.

Petitioner filed this Petition on August 4, 2010. (ECF No. 1.) Petitioner alleges that his due process rights were violated because the DHO's finding of guilt was not based on the greater weight of the evidence and because he was not provided with a copy of the DHO's report withing 10 days of the DHO hearing. (ECF No. 1, Pet. for Writ of Habeas Corpus at 3, 6, 8-9 [hereinafter "Pet."].)

## II. DISCUSSION

### A. Petitioner's Constitutional Rights Were Not Violated During the Disciplinary Proceedings

To obtain habeas relief under 28 U.S.C. § 2241, a petitioner must demonstrate that he is "in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c)(3); *Rose v. Hodges*, 423 U.S. 19, 21 (1975). Here, Petitioner alleges that his right to due process was violated because the disciplinary sanction was based on insufficient evidence. Petitioner further alleges that his right to due process was violated when he was not provided with a copy of the DHO report until nearly six months after the DHO hearing, rather than within ten days of the hearing as provided in BOP regulations. (Pet. at 8-9.) The Court finds that the record does not support Petitioner's contention that he was disciplined in violation of his constitutional rights.

#### 1. The Disciplinary Hearing Comported With the Procedural Requirements Set Forth in *Wolff*

Petitioner claims he was subjected to disciplinary sanctions in violation of his due process rights because he was not provided with a copy of the DHO report until almost six months after the DHO's decision was made. (Pet. at 8-9.) A prisoner who is facing a loss of good conduct credits is not entitled to the full panoply of procedural rights that accompanies a criminal prosecution. *Wolff v. McDonnell*, 418 U.S. 539, 566 (1974). However, a prisoner must be afforded at least some procedural due process protections before being deprived of good conduct time. *Id.* at 557. To satisfy the constitutional requirements of due process, prisoners facing a loss of good conduct time must be given: 1) advance written notice of the charges; 2) an

n
n
n

impartial hearing body; 3) an opportunity to present witness testimony and other evidence; 4) assistance for illiterate inmates or in complex cases; and 5) a written explanation of the evidence relied on and the reason for the disciplinary action taken.  *Wolf*, 418 U.S. at 563-71; *see also Espinoza v. Peterson*, 283 F.3d 949, 951-52 (8th Cir.2002).

The Court finds Petitioner received at least the minimal procedural benefits prescribed by *Wolff* during his disciplinary proceeding. The record shows that Petitioner was provided a copy of the incident report that afforded him written notice of the charges well in advance of the UDC and DHO hearings. (Buege Decl. Attach. B.) The hearing was conducted by a certified DHO, who was an impartial fact-finder as he was not the writer of the incident report, the investigating officer, a member of the UDC, or a witness to the incident. (Buege Decl. ¶ 12, Attach. B and D.) Petitioner was present during the UDC and DHO proceedings. He was advised of his rights prior to the hearings, including the right to a staff representative and the right to present witnesses and documentary evidence on his behalf.  (Buege Decl. Attach. C.)  Petitioner indicated on the "Inmate Rights at Discipline Hearing" form that he did not wish to call witnesses or have a staff representative.  *Id.*  Petitioner testified at the hearing on his own behalf.  (Buege Decl. Attach. D.)

Petitioner argues that his due process rights were violated because he was provided a written report of the DHO decision almost six months after the decision was made. (Pet. at 8-9.) Federal regulations provide that "the DHO shall give the inmate a written copy of the decisions and disposition, ordinarily within 10 days of the DHO's decision." 28 C.F.R. § 541.17(g).  The Court finds that this delay in providing Petitioner with the DHO report did not violate Petitioner's due process rights.  The Supreme Court in *Wolff* explained that a written statement of the evidence relied on and reasons for the disciplinary action would allow for review of the

7

DHO's decision. *Wolf*, 418 U.S. at 564-565. Although Petitioner did not receive the report within ten days of the DHO hearing, Petitioner was still allowed to appeal the decision within twenty days of his receipt of the report. Petitioner did appeal the DHO's decision to the Regional and Central Office Levels. (Buege Decl. Attach. F.) The Court finds that because Petitioner was still able to utilize the administrative appeal process after receiving the DHO report, his due process rights were not violated. The record shows that Petitioner was afforded the basic procedural safeguards required by *Wolff*.

**2.      There Was Sufficient Evidence to Support the Findings of the DHO**

Petitioner claims that there was insufficient evidence to find that he engaged in the prohibited act of Conduct which Disrupts the Orderly Running of a BOP Facility, Most Like Threatening Another Person or Any Prohibited Act, BOP Code 299 most like Code 203. Petitioner argues that the only evidence of his intent to mail the letters outside SPC Beaumont is his own statement, as recounted by Mr. Phillips in the incident report. Petitioner points out that this statement conflicts with Petitioner's statement before the UDC, in which he expressed an intent to mail the letters inside SPC Beaumont. Petitioner argues that because the statements conflict, neither version of Petitioner's statement can be given greater weight than the other, and therefore Petitioner's statement cannot provide a basis for the DHO's decision. (Pet. at 8-9.) Petitioner further argues that the contents of the confiscated letters cannot provide evidence of Petitioner's guilt, because the letters were sealed and Petitioner did not know the contents. (Pet. at 9.)

To satisfy the requirements of due process, the record must only include some evidence that supports the disciplinary decision. *See Superintendent, Massachusetts Correctional Institution v. Hill*, 472 U.S. 445 (1985). In *Hill*, the Supreme Court stressed that the decision of a prison disciplinary officer after a disciplinary hearing was entitled to considerable deference. *See id.* at 454 (the findings of a prison disciplinary authority should not be second-guessed by the federal courts as long as they "are supported by some evidence in the record"). "Ascertaining whether this standard is satisfied does not require examination of the entire record, independent assessment of the credibility of witnesses, or weighing of the evidence." *Id.* at 455-56. Instead, courts shall look to whether there is any evidence in the record that could support the conclusion reached by the disciplinary board. *Id.*; *see also Goff v. Burton*, 7 F.3d 734, 739 (8th Cir.1993). A prison guard's testimony or incident report is sufficient to provide some evidence. *Id.* at 456. Courts are not part of the appellate process for prison discipline proceedings. *Courtney v. Bishop*, 409 F.2d 1185, 1187 (8th Cir.1969); see also, *Mitchell v. Maynard*, 80 F.3d 1433, 1445 (10th Cir.1996) (if there is some evidence to support a disciplinary committee's decision, the requirements of procedural due process have been met; the decision can be upheld even if the evidence supporting the decision is "meager").

Here, the Court finds that the minimal "some evidence" standard is met. The DHO considered both Petitioner's statement to Mr. Phillips that he intended to mail the letters outside SPC Beaumont and Petitioner's statement at the DHO hearing that he intended to mail the letters inside the facility. (Buege Decl. Attach. D.) Ultimately, the DHO found Petitioner's statement to Mr. Phillips to be more credible, based on the fact that some of the letters were addressed to other inmates and Petitioner would have known that this was forbidden without staff permission. *Id.* The DHO also relied on the fact that Petitioner's status as the milk truck driver gave him

access to postal facilities outside SPC Beaumont, which would allow letters to other inmates to be mailed without being intercepted by prison staff. *Id.* The DHO also relied on the contents of the confiscated letters, one of which was addressed to another federal inmate and discussed asking a suspected informant for his "shit," which Mr. Phillips and the DHO both determined referred to court documents. *Id.* The DHO found that inmates discussing possible informants via the mail poses a direct threat to those other inmates, as suspected informants are commonly assaulted. *Id.* The DHO concluded that Petitioner's assistance in helping the inmate who wrote the letters to mail them without being intercepted by prison staff posed a threat to and disrupted BOP security. *Id.*

This Court finds Petitioner's statement that he intended to mail the letters outside SPC Beaumont, combined with the fact that some of the letters were addressed to other inmates and discussed the identification of suspected informants, sufficient to constitute "some evidence" that Petitioner engaged in the prohibited act of Conduct which Disrupts the Orderly Running of a BOP Facility, Most Like Threatening Another Person or Any Prohibited Act, BOP Code 299 most like Code 203.

### III.  RECOMMENDATION

Based upon the foregoing, and all the files, records and proceedings herein, **IT IS HEREBY RECOMMENDED** that:

1) Petitioner's Petition for a Writ of Habeas Corpus (ECF No. 1) be **DENIED** and that this action be **DISMISSED WITH PREJUDICE**; and

2) **JUDGMENT BE ENTERED ACCORDINGLY.**

It is further recommended, pursuant to 28 U.S.C. § 2253(c), that a Certificate of Appealability not be issued because Petitioner has failed to make a substantial showing of the denial of any constitutional right.

DATED: May 25, 2011    *s/ Franklin L. Noel*
　　　　　　　　　　　　　　　　　　　FRANKLIN L. NOEL
　　　　　　　　　　　　　　　　　　　United States Magistrate Judge

Pursuant to the Local Rules, any party may object to this Report and Recommendation by filing with the Clerk of Court and serving on all parties, on or before June 8, 2011, written objections which specifically identify the portions of the proposed findings or recommendations to which objection is being made, and a brief in support thereof. A party may respond to the objecting party's brief within 14 days after service thereof. All briefs filed under the rules shall be limited to 3,500 words. A judge shall make a de novo determination of those portions to which objection is made.

This Report and Recommendation does not constitute an order or judgment of the District Court, and it is, therefore, not appealable to the Circuit Court of Appeals.